UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMINI INNOVATION CORPORATION, a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>MCFERRAN HOME FURNISHINGS, INC. A California corporation, SHARON LIN, an individual, and DOES 1-9, inclusive,<br><br>    Defendants. | CV 13-6496 RSWL (SSx)<br><br>**ORDER Re: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [46]** |

## I.  INTRODUCTION

Currently before the Court is Defendants McFerran Home Furnishings, Inc. And Sharon Lin's Motion for Summary Judgment [46].  The Court, having reviewed all papers and arguments submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:** The Court **DENIES**

1

Defendant's Motion for Summary Judgment.

## II. DISCUSSION

**A.   Legal Standard**

<u>Motion for Summary Judgment</u>

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986).  The evidence, and any inferences based on underlying facts, must be viewed in a light most favorable to the opposing party.  <u>Diaz v. American Tel. & Tel.</u>, 752 F.2d 1356, 1358 n.1 (9th Cir. 1985).

Where the moving party does not have the burden of proof at trial on a dispositive issue, the moving party may meet its burden for summary judgment by showing an "absence of evidence" to support the non-moving party's case.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986).

The non-moving party, on the other hand, is required by Federal Rule of Civil Procedure 56(e) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  <u>Id.</u> at 324.  Conclusory allegations unsupported by factual allegations, however, are insufficient to create a triable issue of fact so as to preclude summary judgment.  <u>Hansen v. United States</u>, 7 F.3d 137, 138

1  (9th Cir. 1993) (citing <u>Marks v. Dep't of Justice</u>, 578
2  F.2d 261, 263 (9th Cir. 1978)).  A non-moving party who
3  has the burden of proof at trial must present enough
4  evidence that a "fair-minded jury could return a
5  verdict for the [opposing party] on the evidence
6  presented." <u>Anderson</u>, 477 U.S. at 255.  In ruling on a
7  motion for summary judgment, the Court's function is
8  not to weigh the evidence, but only to determine if a
9  genuine issue of material fact exists. <u>Id.</u>

11 **B.   <u>Analysis</u>**
12      a.   *Request for Judicial Notice*
13      As a preliminary matter, Defendant requests that
14 the Court take judicial notice of United States Design
15 Patent No US D518,973 S, assigned to Ashley Furniture
16 Industries, Inc., entitled "Poster Bed," attached as
17 Exhibit 3 to the Motion.  (Dkt. # 46-3).  Because the
18 document is not subject to reasonable dispute and is
19 capable of accurate and ready determination by resort
20 to sources whose accuracy cannot reasonably be
21 questioned (<u>see</u> <u>Lee v. City of L.A.</u>, 250 F.3d 668, 689
22 (9th Cir. 2001)), the Court **GRANTS** Defendant's Request
23 for Judicial Notice.
24      b.   *Evidentiary Objections*
25      Defendant raises evidentiary objections to nearly
26 every part of every piece of Plaintiff's evidence.  <u>See</u>
27 Dkt. ## 66-15-66-24.  To the extent the Court relies
28 upon the objected to evidence in reaching its

conclusions, the Court has addressed those objections below. <u>See</u> <u>infra</u> p. 23, 28.  However, to the extent the Court has not relied on the objected to evidence, it need not rule on those evidentiary objections and deems those objections **as MOOT**.

Plaintiff also raises two evidentiary objections to Defendant's evidence.  <u>See</u> Dkt. ## 60-15, 60-16.  The Court has not relied on the objected-to evidence in coming to a conclusion and accordingly, need not rule on the objections; instead, it deems them **as MOOT.**

   c. *Motion for Summary Judgment*

      i. *Trade Dress Infringement Claims*

To prevail on a claim for trade dress infringement, Plaintiff must show that its products, here its Hollywood Swank bedroom collection and its Villa Valencia bed, have acquired secondary meaning. <u>Wal-Mart Stores, Inc. v. Samara Bros.</u>, 529 U.S. 205, 216 (2000).  Summary judgment against Plaintiff on its trade dress claims is only appropriate if Defendants show that there is no genuine dispute as to any material fact, and that they are entitled to judgment as a matter of law.  Here, Defendants argue there is no genuine dispute as to any issue of material fact and that as a matter of law, Plaintiff's products have not acquired secondary meaning.  Mot. 9:25-10:9.  At the outset, the Court notes that Defendants' arguments are largely based on their interpretation of the evidence and their comparative analysis of its quality.  These

arguments that are not given great weight at the summary judgment stage given the Court's obligation to view the evidence in a light most favorable to the non-moving party (here, to Plaintiff).

Secondary meaning, or acquired distinctiveness, is the "mental association by a substantial segment of consumers and potential customers between the alleged trade dress and a single source of the product." Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir.1985). A non-exhaustive list of factors considered in determining whether a secondary meaning has been achieved includes: (1) direct consumer testimony or consumer perception; (2) exclusivity, manner, and length of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) established place in the market; (6) actual confusion; and (7) proof of intentional copying by the defendant. Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1152 (9th Cir. 1999)). These factors can be shown through direct and circumstantial evidence. 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 15:30 (4th ed. 1997). The Court views the evidence in the light most favorable to Plaintiff, and because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored. Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir. 2002).

In moving for summary judgment regarding the issue

of secondary meaning, Defendants address each of the factors listed above in arguing that their evidence shows Plaintiff's products have not achieved secondary meaning. To begin, this approach is problematic, because this list of factors is non-exhaustive and the factors are to be evaluated comprehensively, with different factors being given different weight depending on the situation. <u>See</u>  2 J. Thomas McCarthy, Trademarks and Unfair Competition § 15:30 (4th ed.1997). Further, while Defendants repeatedly assert there is no genuine issue as to any material fact, their summary judgment motion is largely comprised of simple comparative analysis of each side's evidentiary offerings–in short, Defendants are asking the Court to act not as summary adjudicator, but as the trier of fact on questions properly left to a jury.

On the secondary meaning question, for example, Defendants contend that Plaintiff has submitted no evidence that consumers perceive the Villa Valencia and Hollywood Swank product designs as originating from a single source; instead, Defendants have shown that the primary significance of the design to customers is the visual appeal of the products. Mot. 10:16-19. Plaintiff disputes this interpretation of Defendants' survey results. Pl.'s Statement of Genuine Issues ("SGI") ¶¶ 54, 55. Defendants dispute Plaintiff's interpretation of Defendants' survey results, arguing that their experts relied on "well-established

methodolgy" in making their conclusions. Reply 7:22-27. Thus, there is a genuine issue as to the material fact of customer interpretation.

Regarding the second factor, Defendants argue that Plaintiff's designs are not exclusive, but in fact "common place adaptations of pre-existing designs based on historical resources and consistent with furniture trends in the industry." Mot. 11:19-21. Defendants contend that "courts frequently grant summary judgment when the evidence demonstrates that the purported trade dress of the furniture product design is generic and common in the market." Id. at 11:26-28 (citing Pride Family Brands, Inc. v. Carl's Patio, Inc., 2014 WL 347040, at *4 (S.D. Fla. Jan 30, 2014)). Here, Defendants argue, "it is undisputed that the purported trade dress of the AICO Subject Products is found throughout numerous periods of history and that the current marketplace is inundated with similar designs." Id. at 12:4-11. In contrast, Plaintiff contends that Defendants ignore the definition of "trade dress" when they argue that Plaintiff's trade dress is found throughout numerous periods of history and is widespread in the current marketplace. Opp'n 8:21-24 (citing International Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822 (9th Cir. 1993)(defining trade dress as "the total image of a product and may include features such as size, shape, color, color combinations, texture or graphics.")). Plaintiff

contends that Defendant has neither identified a single example from history, nor a single example in the current marketplace, that has the trade dress of the AICO subject products. Id. at 9:17-25 (citing SGI at ¶¶ 15-44). Whether or not Plaintiff's designs are, in fact, exclusive, or simply redundant, is an issue for the trier of fact, as Defendants have clearly failed to show as a matter of law that the designs are non-exclusive.

Regarding the third factor, Defendants claim that Plaintiff's advertising and marketing have been ineffective as they relate to consumer identification of "trade dress" with a single source of origin. Mot. 12:13-14. In terms of the amount and manner of advertising, Plaintiff argues that it has taken advantage of "today's communications media with great zeal and efficacy," which can lead to rapid secondary meaning. See Opp'n 11:8-17. Additionally, Plaintiff contends that it spends substantial sums advertising its products and has a substantial presence at well-attended regular industry trade shows, in trade publications, in consumer magazines, on its website, through social media, and through its product catalogues. Id. at 11:17-21 (citing SGI ¶¶ 53, 55, 57, 58, 69-73, 75, 76, 79, 81-83, 101-103, 105, 108-111, 112, 113).[1] There is a genuine issue of material fact

---

[1] Defendants object to all of the Buehler Deposition for lack of foundation. This objection should be

as to whether Plaintiff's advertising and marketing have been effective.

Regarding the fourth factor, amount of sales, Defendants argue that Plaintiff has offered no evidence that the purported amount of product sales are sufficient to infer secondary meaning. Mot. 13:19-22. Plaintiff argues that its millions of dollars in sales, hundreds of retail store dealers selling these products, and thousands of end users who have purchased its products indicate significant market penetration such that a jury could find Plaintiff's products possess secondary meaning. Opp'n 13:3-15.

Regarding the fifth factor, Defendants argue that Plaintiff has not established a place or identification in the market for a particular mark. Id. at 14:14-15. In particular, Defendant argues that the nature of the furniture market makes it difficult to establish secondary meaning and notes that Plaintiff has not offered evidence regarding its sales numbers relative to market share. Mot. 14:18-24. Plaintiff, in contrast, argues that Defendants do not address the

---

denied as Deponent has expertise in the area in which he testifies. Defendants also object to the declaration of C. Reilly in its entirety because it is "self-serving." While Defendant's cite case law indicating the Court may be skeptical of the ability of an associate of a trademark holder to be objective in valuing the holder's mark, Defendant overstates this meaning to require that Reilly's testimony should not be admitted.

facts specific to Plaintiff's established place in the market, instead offering "only generalizations about the furniture market." Opp'n 14:10-11. Plaintiff asserts that it (1) has advertised inside the front cover of "virtually every issue of Furniture Today for years"; (2) regularly displays and advertises the relevant furniture at the industry's largest trade shows; and (3) has received recognition for its leadership in the industry. Id. at 14:12-18. These facts, taken together, could lead a reasonable jury to find that Plaintiff has an established place in the furniture industry. Id. at 14:19-22.

Regarding the sixth factor, Defendants argue that Plaintiff has offered no evidence of actual confusion. Mot. 14:26-27. Plaintiff admits that it does not have evidence of actual confusion "per se" but contends that it has indirect evidence that Defendant may have been attempting to cause consumer confusion. Opp'n 14:24-15:1. Plaintiff contends that its absence of direct evidence establishing confusion is not fatal to a finding of secondary meaning, because the critical factor is not actual confusion, but a likelihood of confusion. Id. at 15:2-10 (explaining why Woodsmith Publishing Co. v. Meredith Corp., 904 F.2d 1244, 1249-50 (8th Cir. 1990), is not fatal to its claim as Defendant alleges). Defendants argue that their own evidence indicates a lack of probability of confusion and argue that this evidence should be sufficient for

summary judgment in their favor. Id. at 15:1-12. This dispute creates a genuine issue of material fact, and shows that Defendants cannot be said to have shown no likelihood of confusion as a matter of law.

Regarding the seventh and final factor, Defendants argue that Plaintiff has not submitted evidence of intentional copying. Mot. 15:13-15. Plaintiff wholeheartedly disputes this, arguing that Defendants' past history of infringing Plaintiff's and others' products is evidence of Defendants' modus operandi and evinces an intent to intentionally copy Plaintiff. Opp'n 15:15-19. Plaintiff also argues that the "extremely similar" names Defendants gave their products is circumstantial evidence of intentional copying. Id. at 15:20-24. Further, Plaintiff argues that Defendants' alleged examples of historical and contemporary furniture similarities to Plaintiff's products is evidence of intentional copying because these products are not nearly as similar to Plaintiff's products as Defendants' products. Id. at 15:25-16:5. Finally, Plaintiff asserts that its own expert offers compelling evidence that Defendants intended to copy Plaintiff's products. Id. at 16:6-12 (citing SGI ¶¶ 69, 77). Accordingly, there is a clear dispute as to this material fact such that summary judgment is inappropriate on the issue of secondary meaning.

With respect to the trade dress claim, Defendants also argue that Plaintiff's trade dress is generic by

nature, which is fatal to its claim because non-genericness is a prima facie element of a plaintiff's claim for trade dress infringement.  Mot. 16:5-11 (citing Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1051 (9th Cir. 1998); Walker & Zanger, Inc. v. Paragon Indus., Inc., 549 F. Supp. 2d 1168, 1173 (N.D. Cal. 2007)).  Defendant asserts two reasons for the Court to find, as a matter of law, that Plaintiff's trade dress is generic and thus not entitled to protection: (1) Plaintiff's definition of the alleged trade dress is overbroad; and (2) the product design is so common in the industry that it cannot be said to identify a particular source.  Id. at 16:1-19:15.

With respect to over-breadth, the Court finds that Defendant has failed to demonstrate that Plaintiff's definition is overbraod as a matter of law.  While Defendant identifies certain words that it alleges are so "nondescript" as to warrant summary judgment, it is not clear that Plaintiff has "resort[ed] to empty generalities in the face of more precise alternatives." Walker & Zanger, 549 F. Supp. 2d at 1176.  For example, in defining the trade dress of the Hollywood Swank bedroom collection bed, Plaintiff describes: the specific colors that make up the color combination; the overall linear design; the precise location of certain decorative elements ("thin, banded element parallel to and just below top border of headboard"); the material

12

and design of the headboard; precise elements of the front of the bed ("shiny or sparkling inserts in spaced recesses of upholstered front surface"); a clear description of the arrangement of the legs of the bed ("said legs comprising an articulated projection have a saucer-like appearance at its middle portion"); and a clear description of the footboard ("straight, squared, unadorned footboard and rails with legs prominent"). SGI ¶ 3.  While it is true that Plaintiff uses certain descriptors that could, taken alone, be considered generic, it is difficult to determine how Plaintiff could be more descriptive given the entire design it must describe.  Further, while Defendant cites Walker & Zanger in attempting to explain why Plaintiff's trade dress definition is too generic, Plaintiff's description appears to avoid the pitfalls of the trade dress description in Walker & Zanger.  For example, in Walker & Zanger, the court noted that using terms such as "rustic look" or "weathered look," Plaintiff left the boundaries of the trade dress rights unclear, here, it is Defendant, not Plaintiff, who uses such descriptors.  549 F. Supp. 2d at 1176.  In Walker & Zanger, the court indicated that the plaintiff "should list the actual colors rather than claim a palette of colors reminiscent of Provence"; here, Plaintiff lists the actual colors of its designs.  Id.  Accordingly, it cannot be said that as a matter of law, Plaintiff's trade dress description is too generic.

Next, Defendant argues that Plaintiff's trade dress is generic because it is so common in the industry that it cannot be said to identify a particular source. Mot. 17:20-21. Specifically, Plaintiff contends that "[c]ourts have specifically held that trade dress is 'generic' an unprotectable where, as here, Plaintiff's competitors offer similar items and where the product design is based on historical designs." Id. at 17:25-28 (citing Walker & Zanger, 549 F.Supp.2d at 1174-75. Unlike in Walker & Zanger, however, in which the plaintiff's own witnesses admitted that at least eight competitors marketed and sold a similar tile line, 549 F.Supp.2d at 1176, here, Plaintiff disputes that anyone other than Defendant is selling a similar line of furniture. See Opp'n 20:1-8. Additionally, while Defendants argue that there are many products currently featuring "common design elements" of Plaintiff's products, Mot. 18:6-7, Plaintiff argues that critically, these products do not embody all, or even substantially all, of Plaintiff's trade dress components, Opp'n 20:4-6. Accordingly, the question of whether Plaintiff's trade dress is generic based on industry commonality is one for a jury.

      ii.   *Copyright Infringement Claim*

To establish copyright infringement, a plaintiff must show that: (1) it owns a copyright covering the allegedly infringed work, and (2) the defendant copied the protected work without authorization. Smith v.

Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).  Defendant asserts first that "any expressive elements contained in the Villa Valencia bed are generic and unoriginal, and do not satisfy the 'originality' test required for copyright protection."  Mot. 4-6.  For the reasons discussed above, Defendant has not shown that as a matter of law, Plaintiff's designs, when taken in their entirety, are generic.

Defendant then asserts that Plaintiff should only be afforded "thin" copyright protection and that it cannot satisfy the resulting "virtually identical" standard.  Mot. 21:21-22:15.  While the appropriateness of applying a thin copyright protection standard is questionable, even if the Court applies the heightened "virtually identical" standard, Defendant has not shown an absence of dispute as to a material fact and that it is entitled to judgment as a matter of law.  Defendant argues that there are "many design differences."  Mot. 23:5-8 (citing Statement of Undisputed Facts ("SUF") ¶¶ 84-92).  Plaintiff argues that there are "minor" design differences that pertain to less noticeable aspects of the product.  Opp'n 22:4-11 (citing SGI ¶¶ 84-92).[2]  This dispute as to a material fact precludes summary judgment.

### iii. *Injunctive Relief*

Defendants argue that Plaintiff has admitted it has

---

[2] Defendant's objections to the Nielson and Buehler declarations are addressed above.

no evidence of actual confusion, that Plaintiff did not seek a preliminary injunction, and that Plaintiff is not seeking actual damages. Mot. 24:19-22. Accordingly, Defendants argue that Plaintiff should be barred from obtaining injunctive relief. Id. at 24:22-24. Plaintiff argues that while there is no longer a presumption of irreparable harm upon a finding of success on the merits, Defendants are incorrect that Plaintiff is barred from obtaining permanent injunctive relief because it did not seek a preliminary injunction and because it is not seeking its lost profits or actual damages. Opp'n 22:25-23:1. Plaintiff argues that seeking damages based on Defendants' profits does not preclude it from showing irreparable harm, and that disgorgement of an infringer's profits is a permissible remedy. Id. at 23:4-8 (citing Ninth Circuit Model Jury Instruction 15.26; Jerry's Famous Deli, Inc. v. Papanicolaou, 383 F.3d 998, 1004-05 (9th Cir. 2004)). As discussed above, Plaintiff has offered evidence of irreparable harm; whether Plaintiff will ultimately prevail in showing that it is suffering actual irreparable harm such that a permanent injunction is warranted is not ripe for this Court to determine at the summary judgment stage.

        iv. *Personal Liability for Sharon Lin*

Finally, Defendants argue that Defendant Sharon Lin should not be subject to personal liability because Plaintiff has submitted no evidence that Sharon Lin

16

personally took part in the allegedly infringing activities or specifically directed employees to do so. Id. at 24:27-25:3.  Plaintiff argues that a corporate officer is individually liable for the torts he or she personally commits and cannot shield himself or herself behind a corporation when he or she is an actual participant in the tort.  Opp'n 23:12-16 (citing Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985)).  Plaintiff argues and has presented evidence that Defendant Lin is the sole officer of McFerran, and is responsible for failing to heed two separate requests to cease and desist the accused activities.  Id. at 24:11-15 (citing SGI ¶ 77). Plaintiff also argues and has presented evidence that Defendant Lin was a direct participant in the accused activities because she was in communications with the alleged designer of the infringing products.  Id. at 24:11-18 (citing SGI ¶ 77).  Plaintiff and Defendants dispute the nature of Defendant Lin's involvement; accordingly, the Court finds that Plaintiff has presented sufficient evidence to avoid summary judgment on this issue.

///
///
///
///
///
///

### III. CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED.**

DATED: December 12, 2014

RONALD S.W. LEW
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge

18